UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. WILSON, | ) | CASE NO. 5:20-CV-02414 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DAVID A. RUIZ |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

## Introduction

Before the Court[1] is an action under 42 U.S.C. § 405(g) by Scott D. Wilson seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Plaintiff's 2017 application for disability insurance benefits.[2] The Commissioner has filed the transcript of the administrative proceedings.[3] The parties have briefed their positions.[4]

For the following reasons, the decision of the Commissioner will be AFFIRMED.

---

1 See, General Order 2022-03, non-document entry dated February 17, 2022.
2. ECF No. 1.
3. ECF No. 12. Pursuant to Local Rule 16.3.1(d), the filing of the administrative record constitutes the Commissioner's answer.
4. ECF Nos. 13 (Plaintiff), 15 (Commissioner), 16 (Plaintiff reply).

**Background Facts**

<u>The ALJ's opinion</u>

Plaintiff, who was born in 1969,[5] and so was 47 years old on the alleged onset date of September 2017,[6] has past relevant work as a boilermaker and truck driver.[7] In addition, Plaintiff worked part-time (4 hours per week) after the alleged disability onset date as a delivery driver, but his earnings were unreported and such employment did not constitute substantial gainful activity.[8]

The Plaintiff has the following severe impairments: (1) major joint dysfunction; (2) degenerative changes in the lumbar spine; (3) lumbar radiculopathy; (4) loss of central visual acuity; and (5) hearing loss.[9] Then, as Plaintiff has challenged here, the ALJ determined that Mr. Wilson does not have an impairment or combination of impairments that meet or medically equal a listing.[10]

To that point, the ALJ first considered Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 2.04 (loss of visual efficiency, or visual impairment, in the better eye) and 2.10 (hearing loss not treated with cochlear implantation).[11] As relates to Listing 1.02, and particularly 1.02(B), the ALJ found that Mr. Wilson does not meet the listing because "[h]e does not have significant limitation of motion [in his shoulder], combined with an inability to perform fine and gross movements effectively" as defined in the listing.[12] Concerning Listing 1.04, the ALJ stated that Plaintiff's degenerative disc disease does not meet this listing because "there is no

---

5. Tr. at 103.
6. *Id*. at 96.
7. *Id*. at 103.
8. *Id.* at 98.
9. *Id*. at 99.
10. *Id*.
11. *Id*.
12. *Id*.

credible evidence of nerve root compression."[13] Moreover, the ALJ concluded that Mr. Wilson's "vision impairment does not meet the requirements of listing 2.02, as there is no evidence the loss of acuity meets the standard for remaining vision after best correction."[14] Finally, the ALJ found that Listing 2.10 was not met because the records do not demonstrate the requisite hearing loss in the better ear and also show "word recognition of 100% in both ears."[15]

While the ALJ made the above findings when explicitly evaluating whether Plaintiff met or medically equaled specific listings, the ALJ's analysis of whether there is a combination of impairments that meet or medically equal a listing consisted of the single statement that:

> In reaching the conclusion that the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment, I also considered the opinion of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion.[16]

The ALJ then found that Mr. Wilson has a residual functional capacity (RFC) for light work, with some additional environmental and physical limitations.[17] To that point, the RFC provides, *inter alia*, that Plaintiff avoid commercial driving and be limited to doing tasks requiring precise near acuity and depth perception, while permitting performance of tasks that can be performed with vision in one eye that do not require peripheral vision on the right (blind) side.[18]

In support of the RFC, the ALJ noted first that the claimant's statements about the intensity, persistence, and limiting effects of his symptoms were not consistent with the record.[19] The ALJ observed that: (1) Mr. Wilson in 2019 noted that he was able to run 2 miles and walk 1 mile "a

---

13. *Id.*
14. *Id.*
15. *Id.*
16. *Id.*
17. *Id.*
18. *Id.*
19. *Id.* at 100.

couple times a week;" (2) that he "has had significant improvement since his surgeries;"[20] (3) he is still able to drive, despite vision problems; and (4) Plaintiff is able to perform activities of daily living, such as running the dishwasher, washing clothes, cooking, getting his mail, and watching television.[21]

After concluding that Mr. Wilson could not perform his past relevant work as a boilermaker or truck driver, the ALJ, with testimony from a vocational expert, determined that Plaintiff could perform the requirements of: (1) assembler, plastic hospital products; (2) assembler, electrical accessories; and (3) hardware assembler, and further found that jobs in the foregoing areas exist in significant numbers in the national economy.[22]

The ALJ, therefore, found Mr. Wilson not disabled.

Issues for judicial review

Plaintiff presents two issues for judicial review:

1.　The ALJ committed harmful error when his RFC did not consider the effect of the combination of Plaintiff's severe impairments on his ability to engage in substantial gainful activity on a sustained basis.

2.　The ALJ committed harmful error in his determination regarding Plaintiff's credibility in violation of Social Security Ruling 16-3p.[23]

Plaintiff, however, presents several distinct arguments within the first issue. Initially,

---

20. *Id*. The ALJ reviewed the medical evidence and noted that: (1) the Plaintiff was "progressing well, with good progress with shoulder range of motion and function" after right shoulder arthroscopic debridement on April 27, 2018 (*id*. at 101); (2) Mr. Wilson reported that "the numbness to his left foot is gone since [January 2019 orthopedic] surgery, and he was off pain medication" (*id*. at 101-02); and (3) laser eye surgery in July 2018 resulted in good results with stable vision (*id*. at 102).
21. *Id*. at 100.
22. *Id*. at 104.
23. ECF No. 13 at 1.

Plaintiff contends that the ALJ's analysis of whether particular listings were met was flawed because:

(1) the only clinical evidence cited by the ALJ was a single audiology examination, while the ALJ failed to "detail the other documented problems in the record;"[24] and

(2) the ALJ conducted only a "perfunctory analysis of the relevant Listings" which failed to permit the reviewing court to conduct meaningful judicial review.[25]

Next, Plaintiff argues that the ALJ failed to consider the effect of a combination of his impairments and then provided only a perfunctory explanation/rationale for the finding that no combination of impairments met or medically equaled a listing.[26] To this point, Mr. Wilson largely cites to evidence relating to pain, which, he maintains, may itself be a disabling impairment.[27]

Then Plaintiff raises questions concerning the persuasiveness of medical opinions[28]—an issue not specified in his listing of issues for judicial review. In particular, Plaintiff contends that it was error for the ALJ to find the opinions of state agency reviewers to be "somewhat persuasive" (initial review in December 2017) and "more persuasive" (reconsideration in January 2018) when such opinions predate the submission of medical evidence from the rest of 2018 and before the Appeals Council in 2020.[29] Plaintiff contends that this evidence—not considered by the state agency sources—supported additional functional limitations not addressed by the ALJ and so not presented to the vocational expert.[30] In that regard, he also asserts that the testimony of the

---

24. *Id*. at 13 (citing "problems with both [Plaintiff's] cervical and lumbar spines, EMG evidence of carpal tunnel syndrome, status-post right shoulder and back surgeries, loss of vision in right eye and retinal tear and central serous retinopathy in left eye").
25. *Id*. at 14.
26. *Id*. at 15.
27. *Id*. at 15-16.
28. *Id*. at 16-19.
29. *Id*. at 16-18.
30. *Id*. at 18-19.

5

vocational expert (VE), who testified at the administrative hearing, was inconsistent regarding whether Plaintiff could perform the duties of the jobs cited by the VE with diminished near acuity in the one remaining, sighted eye.[31]

Under the second stated issue for judicial review—the assessment of credibility—Plaintiff re-states his complaint that his pain, eye conditions, depression, poor cognition, reduced ability to hear, and financial difficulties in obtaining surgery were not properly considered when determining if his testimony was credible.[32]

Plaintiff's reply brief characterizes his argument alleging an insufficient analysis of his combined impairments as—"the ALJ clearly did not consider the effect of the combination of Plaintiff's physical impairments and whether they supported the ALJ's decision finding that [Plaintiff] was capable of performing work at the light level of exertion and standing/walking the requisite six hours a day on a sustained basis."[33] The reply brief also re-states the assertions that: (1) the ALJ failed to consider whether Plaintiff's pain was itself a disabling impairment[34] and (2) the VE's testimony about the functional effects of Plaintiff's visual impairments was inconsistent with the Dictionary of Occupational Titles (DOT).[35]

The Commissioner's brief asserts that Plaintiff's records prepared and submitted to the Appeals Council (AC), after the ALJ's decision, were considered by the AC, but not properly the subject of a Sentence Six remand since the evidence does not relate to the period on or before the date of the hearing decision.[36]

---

31. *Id*. at 19.
32. *Id.* at 22-23.
33. ECF No. 16 at 2.
34. *Id*. at 3.
35. *Id*. at 3-4.
36. ECF No. 15 at 3 n.2, 21-22.

Next, the Commissioner contends that the ALJ properly evaluated each relevant listing in determining that Plaintiff did not meet a listing.[37] The Commissioner argues that the ALJ properly considered the Plaintiff's subjective complaints in crafting the RFC, including his complaints of pain and poor vision.[38]

In that regard, the Commissioner observes that:

(1) the medical evidence shows unremarkable 2018 MRI findings concerning the Plaintiff's right shoulder and back, and 2018 nerve conduction studies show no clinically significant neuropathy or radiculopathy;

(2) follow-up from 2018 laser eye surgery showed good results, with stable vision, and visual acuity in the right eye (OD) at CF[39]@2;[40]

(3) directly relating to pain, Plaintiff was off all pain medication in February 2019; in March 2019, he reported no leg or back pain, just "stiffness;" on April 5, 2019, he reported his back was getting stronger and pain was "2 out of 10;" on April 15, 2019, he reported upper body pain, mostly in the right shoulder;[41]

(4) Plaintiff has the "ability to perform various daily activities, including chores and exercising."[42]

Finally, as to Plaintiff's assertions regarding the VE's testimony, the Commissioner asserts that: (1) the VE responded to hypotheticals that reflected the RFC ultimately used in the decision, which thus supports the Step Five finding; and (2) Plaintiff's attack on the VE's testimony is

---

37. *Id.* at 12-14.
38. *Id.* at 17-19.
39. CF in an eye exam means count fingers
40. *Id.* at 18 (citing Tr. at 102).
41. *Id.* at 19 (citing Tr. at 102).
42. *Id.* (citing Tr. at 100).

waived since Plaintiff and his counsel had the opportunity to more fully develop the record during cross-examination at the administrative hearing, but failed to do so.[43]

**Analysis**

Standard of review

As both parties acknowledge,[44] the essential relevant standard of review is whether the ALJ's decision is supported by substantial evidence.[45]

Discussion

*Preliminary matters*

Two preliminary matters must be discussed before the substantive issues raised by Plaintiff are addressed. First is the matter of records that were created after August 26, 2019, which is the date of the ALJ's decision. Next, is whether Plaintiff is now precluded from attacking the VE's testimony when he failed to do so at the hearing.

*Post-decision records*

As to the issue of records post-dating the ALJ's decision, the August 2020 decision of the Appeals Council specifically noted that, except for a two-page report from Vitreo Retinal Consultants dated June 4, 2019, which the Appeals Council concluded would not change the outcome of the ALJ's decision, the remaining evidentiary material, which was created from September 2019 through March 2020, does not relate to the period at issue and so does not affect the decision of whether Plaintiff was disabled on or before August 26, 2019.[46] The Court agrees. As such, some of the evidence cited by Plaintiff in his brief as being probative of his pain and not

---

43. *Id.* at 21.
44. ECF Nos. 13 at 9 (Plaintiff), 15 at 11 (Commissioner).
45. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
46. Tr. at 2.

discussed by the ALJ[47] is not properly considered here.

*VE's testimony*

Further, it is well-settled that if a plaintiff fails to object to the testimony of a VE or fails to cross-examine the VE on a particular point during the hearing, that plaintiff waives the right to argue the allegedly disputed point to the district court.[48]

Here, the colloquy between Plaintiff's counsel and the VE was brief. In relevant part, after the VE testified about available jobs at the sedentary exertional level in connection with handling and fingering requirements, the following exchange occurred:

Q. Okay. Would the visual problems be an issue with that though if you're missing peripheral vision?

A. Well, let's look at it. Let me see here. I want to see what the Dictionary's saying. Well, the only thing that the Dictionary is saying is near acuity would be frequent.

Q. I'm sorry, near acuity what?

A. Would be frequent.[49]

After this, there was a single question and response about the acceptable amount of absenteeism.[50] Then, the VE testified in response to a question from the ALJ that his testimony was consistent with the DOT and the Selected Characteristics of Occupations (SCO).[51]

If, as now claimed, Wilson is concerned that "there is a question as to whether the jobs cited by [the VE] could be performed" under the requirement of frequent near acuity when Wilson

---

47. ECF No. 13 at 17-18 (citing February 24, 2020 examination by Dr. Diulus for neck and arm pain; February 10, 2020 evaluation by Dr. Stachowicz for left elbow and left shoulder pain; and February 2020 examination by Dr. Widmer for bilateral shoulder pain, with diagnosis of arthritis, bursitis and tearing of the labral).
48. *Adams v. Saul*, 2020 WL 4550897, at *6 (E.D. Ky. Aug. 6, 2020) (collecting cases).
49. Tr. at 135.
50. *Id.* at 136.
51. *Id.*

had diminished near acuity in his one remaining eye,[52] Plaintiff and his counsel had the opportunity to obtain an answer to that question at the hearing, but, as detailed above, did not do so. Thus, pursuant to the authority cited above, Plaintiff has waived this claim.

*Issues for review*

*Combination of impairments*

The regulations provide that a claimant's impairment can be found to be medically equivalent to a listing in three ways: (1) the claimant has a listed impairment but does not have the requisite degree of severity, yet has "other findings" that are at least of equal medical significance; (2) the claimant has a non-listed impairment that is at least of equal medical significance to a listed impairment; or (3) the claimant has a combination of impairments which do not individually meet a listed impairment, but are at least of equal medical significance to a listing when viewed in totality.[53] In applying the third element of this regulation, the ALJ is directed to "consider the combined effects of impairments that individually may be non-severe, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability."[54]

To this end, an ALJ's analysis of a claimant's combined impairments is sufficient where: (1) the ALJ referred to a "combination of impairments" in deciding that the claimant did not meet the listings; (2) the ALJ referred to the claimant's "impairments" as not being severe enough to preclude performance of his past relevant work; (3) the ALJ's decision was made after careful consideration of the "entire record;" and (4) all the claimant's impairments were discussed

---

52. ECF No. 13 at 19.
53. 20 C.F.R. § 416.926; 20 C.F.R. § 404.1526.
54. *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988); *see also* 20 C.F.R. § 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

individually in the opinion.[55] In that regard, the Sixth Circuit has also stated that to "require a more elaborate articulation of the ALJ's thought process would not be reasonable."[56]

Stated more simply, the Sixth Circuit has held that an ALJ properly considered the combined effects of the claimant's impairments when the ALJ's decision referred to the claimant's "impairments" and "combination of impairments."[57] In addition, when the reviewing court analyzes the ALJ's decision on this question, "the Sixth Circuit has repeatedly emphasized the need to review the ALJ's decision as a whole."[58]

Here, as detailed above, the ALJ at Step Four individually addressed all five of Plaintiff's severe impairments in the context of the four[59] specific listings utilized. That discussion by the ALJ identified a specific reason why Plaintiff did not meet the criteria for each named listing.[60] Further, the ALJ also mentioned that there was no opinion evidence from any medical source pointing to findings that would show that Mr. Wilson satisfies the severity requirement for any listed impairment.[61] Similarly, the ALJ also noted that "[i]n reaching the conclusion the claimant does not have an impairment or combination of impairments that meet or medically equal a listed impairment," no state agency consultant opined that Plaintiff met or equaled any listing.[62]

Considered in its totality, the opinion of the ALJ conforms to the reasoning and articulation

---

55. *Rupert v. Comm'r of Soc. Sec.*, 2014 WL 4721681, at *4 (W.D. Mich. Sept. 22, 2014) (citing *Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir. 1987)).
56. *Gooch*, 833 F.2d at 592.
57. *Loy v. Sec'y of HHS*, 901 F.2d 1306, 1310 (6th Cir. 1990).
58. *Malone v. Comm'r of Soc. Sec.*, 2011 WL 5520292, at *2 (N.D. Ohio Nov. 10, 2011) (citing *Kornecky v. Comm'r*, 167 F. App'x 496, 508 (6th Cir. 2006) (internal quotation omitted). "An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Id*.
59. The impairment of lumbar radiculopathy is properly considered under Listing 1.04 (disorders of the spine). *Scott v. Saul*, 2021 WL 1212666, at *2 (E.D. Mich. Mar. 31, 2021). Listing 1.04 is also applicable to degenerative changes in the lumbar spine. *Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 529 (6th Cir. 2006).
60. Tr. at 99.
61. *Id*.
62. *Id*.

requirements for assessing the combination of impairments set out above. Plaintiff's first assignment of error lacks merit.

*Claimant's credibility/pain*

As noted above, Plaintiff argues that "the record established that the combination of his symptoms and pain precluded him from being able to stand/walk for six hours per workday" and that the ALJ "failed to provide sufficient information [when formulating the RFC with this stand/walk provision] so this Court can facilitate [*sic*] meaningful judicial review."[63] He then asserts that, given the "symptoms and limitations imposed by pain in [the claimant's] shoulder blades, back and hands," the ALJ failed to "complete the requisite analysis to consider whether Plaintiff's pain was a disabling impairment."[64]

Initially, it must be noted that Plaintiff appears to frame his argument relating to pain in terms of whether, if his complaints were properly credited, the RFC should have been more restrictive. But then, as detailed above, he also appears to argue that the error was at Step Two in that his pain alone should have been considered a disabling impairment.

Under the pertinent regulations, pain is considered a symptom of an underlying impairment going to the severity of the impairment and is not itself an impairment, which, if underlying criteria are met, would render the claimant disabled.[65] As the Court recently stated in *Lynch v. Commissioner*, "[t]he Commissioner will not, however, find an individual to be disabled based on alleged symptoms alone."[66]

---

63. ECF No. 16 at 2-3.
64. *Id*. at 3.
65. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)).
66. *Lynch v. Comm'r of Soc. Sec.*, 2021 WL 4556247, at *7 (N.D. Ohio Sept. 20, 2021) (citations omitted), *report and recommendation adopted*, *Lynch v. Kijakazi*, 2021 WL 4553089 (N.D. Ohio Oct. 5, 2021).

When a claimant alleges a disabling symptom such as pain, the ALJ follows a two-step process for evaluating that allegation.[67] First, the ALJ determines if the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[68] Then, the ALJ evaluates the intensity and persistence of the claimed symptoms and determines the extent to which they limit the individual's ability to perform work-related activities.[69] At this second stage, the ALJ may consider the testimony of the witness, or evidence gleaned from other medical and non-medical sources.[70] The ALJ will also consider a claimant's daily household, personal, and social activities when evaluating an assertion of pain or other symptoms.[71]

The ALJ is not required to accept the claimant's subjective complaints and may discount the claimant's testimony when the ALJ deems it inconsistent with the objective evidence.[72] The ALJ's decision, however, must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."[73] The ALJ need not use any "magic words" in articulating this finding, so long as it is clear from the decision as a whole why the ALJ reached the particular conclusion.[74]

An ALJ's finding on the credibility of subjective evidence receives great deference on judicial review.[75] Absent a compelling reason, this Court may not disturb the ALJ's analysis of

---

67. *Massey v. Comm'r of Soc. Sec.*, 409 F. App'x 917, 921 (6th Cir. 2011).
68. 20 C.F.R. § § 404.1529(c)(1), 416.929(c)(1); SSR 16-3p.
69. 20 C.F.R. § § 404.1529(c)(1), 416.929(c)(1); SSR 16-3p.
70. 20 C.F.R. § § 404.1529(c)(1), 416.929(c)(1); SSR 16-3p.
71. *Walters*, 127 F.3d at 532.
72. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).
73. SSR 16-3p.
74. *Christian v. Comm'r of Soc. Sec.*, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).
75. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

the claimant's subjective complaints, nor the conclusions drawn therefrom.[76]

Here, as is set forth above in greater detail, the ALJ in preparation for fashioning the RFC initially stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," based on the requirements of the relevant regulations.[77] He then noted the required two-step evaluation process set forth above and cited to Plaintiff's particular complaints.[78] Subsequent to correctly stating the analytical premise, the ALJ then acknowledged that Plaintiff's medically determinable impairments could be expected to cause the symptoms alleged, but then found that the claimant's statements as to the intensity, persistence, and limiting effects of those symptoms was not consistent with the evidence.[79]

To that point, the ALJ first addressed Plaintiff's testimony about his daily activities.[80] Then, the ALJ considered the medical evidence, noting, *inter alia*, as relates to pain:

- Plaintiff experienced relief from right shoulder and scapular pain from subscapular nerve injections in February 2018;
- Nerve conduction studies at the same time gave no evidence of suprascapular neuropathy or cervical radiculopathy;
- After right shoulder arthroscopic debridement in April 2018, the follow-up appointment showed good progress with shoulder range of motion and function, with "no further follow up records for his shoulder[;]"

---

76. *Baumhower v. Comm'r of Soc. Sec.*, 2019 WL 1282105, at *2 (N.D. Ohio March 20, 2019).
77. Tr. at 99-100.
78. *Id*. at 100.
79. *Id.*
80. *Id.*

- As to his lower back pain, an August 2018 follow up from epidural steroid injections showed Plaintiff reported his pain was only intermittent and then only at "3/10" level;

- Later follow-ups in December 2018 documented only "mild pain," for which Plaintiff was taking Aleve;

- After January 2019 back surgery, Plaintiff "reported the numbness to his left foot is gone since surgery, and he was off all pain medication;

- On March 15, 2019, Plaintiff "reported no back pain, just stiffness;" on March 29, 2019, he again reported "no leg or back pain, just stiffness in the morning;" and on April 5, 2019, he reported his pain as "2/10;"

- In the last examination on April 15, 2019, Plaintiff did report upper body pain, mostly at the right shoulder, for which he had a scheduled appointment with rheumatology, but there are no records of such an appointment in the file.[81]

Finally, the ALJ then observed that both state agency consultants—at the initial and reconsideration levels—opined that Plaintiff was capable of light work with some limitations, none of which added any further limitations regarding time spent standing, walking, or sitting.[82] The ALJ found the opinion at the initial level to be somewhat persuasive and the one at the reconsideration level more persuasive.[83]

Accordingly, the ALJ applied the analytical rubric stated above in a manner that articulated the findings with sufficient precision and supported by substantial evidence. In making this finding, the Court also finds that the claimant's challenge essentially requests that this Court either

---

81. *Id*. at 101-02.
82. *Id*. at 103.
83. *Id*.

15

to impermissibly consider evidence from beyond the relevant period or to improperly re-weigh the evidence already considered by the ALJ. Plaintiff's second assignment of error lacks merit.

## Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

*s/ David A. Ruiz*
David A. Ruiz
United States District Judge

Date: September 30, 2022